

**Adam Ziffer**
212.584.1832
aziffer@cohenziffer.com

1350 Avenue of the Americas
New York, NY 10019

212.584.1890 P
212.584.1891 F

August 18, 2021

**<u>Via ECF</u>**
The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     ***Virtu Financial, Inc. et al. v. AXIS Insurance Co.*** No. 20-cv-06293,
<u>**Plaintiffs' Response to AXIS's Letter Motion to Quash (Dkt. 85)**</u>

Dear Judge Parker:

Plaintiffs Virtu Financial, Inc. and Virtu Americas, LLC (collectively, "Virtu") respectfully submit this response to defendant AXIS Insurance Company's ("AXIS") August 17, 2021 letter in which it asks this Court to quash the subpoena *duces tecum* Virtu served on its insurance broker, Marsh & McLennan Companies ("Marsh"). The court should deny AXIS's request to quash the subpoena.

The subpoena seeks (1) the underwriting file Marsh maintained for Virtu for the policy at issue in this case; (2) Marsh's claims file for Virtu's coverage claim, including any correspondence Marsh had with AXIS about Virtu's claim; and (3) documents showing any changes AXIS may have made to its policy forms for Computer Systems Fraud or Social Engineering Fraud in response to or after receiving Virtu's claim. Virtu served the subpoena on Marsh because AXIS has refused to search its own files for these types of documents even though it is the party to this litigation.[1]  Marsh accepted service of the subpoena and has not yet served any written objections.

As a threshold matter, as the defendant, AXIS does not have standing to quash the third-party subpoena directed at Marsh, as "a party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *United States ex rel. Ortiz v. Mount Sinai Hospital*, 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016). AXIS

---

[1] To date, AXIS's single production has consisted of coverage correspondence between Virtu and AXIS and documents that Virtu gave AXIS. AXIS has not produced any claim notes or any internal AXIS discussions of Virtu's claim.

August 18, 2021
Page 2

does not assert any such protected right or privilege over Marsh's documents.  To the contrary, AXIS appears to object to the subpoena on the grounds of relevance and burden.

The subpoena does not impose any burden on AXIS, as the subpoena is directed at Marsh.

As to relevance, even if AXIS did have standing to quash the subpoena, its relevance objection has no merit.  AXIS premises its relevance objection on a statement from Judge Daniels at a hearing held on Virtu's motion for pre-discovery summary judgment, in which he stated that there did not appear to be an ambiguity under the policy and there was no dispute at that time as to what the policy required for Computer Systems Fraud.  Dkt. 71, p. 9.  What AXIS neglects to mention is that Judge Daniels was endorsing *Virtu's* interpretation of what the policy required for Computer Systems Fraud, as Virtu was the movant who affirmatively put forth its argument on how the policy should be read in light of the Second Circuit's decision in *Medidata Solutions Inc. v. Federal Insurance Company*, 729 F. App'x. 117 (2d Cir. 2018), and AXIS's response was that it could not admit or deny the facts put forth by Virtu because discovery had not yet occurred.

Despite Judge Daniels' statement that the policy was likely unambiguous, but discovery was needed, it is *AXIS* who has continued to contest how the policy should be read by continuing to dispute the types of losses that the Computer Systems Fraud provision was meant to cover.  For example, in the parties' proposed case management order (Dkt. 76), when AXIS set forth the defenses it planned on making in this action, AXIS signaled that not only did it intend to dispute the facts as alleged by Virtu (i.e., whether Virtu's computer systems were actually hacked), it *also* intended to dispute what Computer Systems Fraud was meant to cover, putting forth its theory that "Social Engineering Fraud occurs when the insured's human employee is tricked into making a transfer of Money; Computer Systems Fraud occurs when the insured's computer system is tricked into making a transfer of Money itself."  Dkt. 76 at 4.  After the Second Circuit's decision in *Medidata*, which held that the plain language of materially identical computer fraud coverage applied *even if* an insured's employees are tricked, AXIS's argument as to how this policy should be interpreted looks beyond the four corners of the policy, and Virtu is entitled to test the veracity of AXIS's position in discovery.[2]

If AXIS was willing to admit that Computer Systems Fraud would apply in the event discovery proved that the hacking incident occurred as Virtu alleged, and the only remaining issue is a factual one as to whether a hack did, in fact, occur, then there may be some heft to

_____

[2] AXIS's position that the *Medidata* policy is somehow different from the policy here because the *Medidata* policy purportedly did not require "direct" causation is simply wrong.  In assessing what constituted "direct loss" under the computer fraud coverage, *Medidata* expressly rejected the insurer's argument – identical to the one AXIS makes here – that "the emails did not directly cause Medidata's loss, because no loss would have taken place if Medidata employees had not acted on the instructions contained in those emails."  *Medidata Solutions, Inc. v. Fed. Ins. Co.*, 268 F.Supp.3d 471, 475 (S.D.N.Y. 2017), *aff'd* 729 F. App'x. 117 (2d Cir. 2018).

August 18, 2021
Page 3

AXIS's objection.  AXIS has not done so, and based on representations AXIS has made to this Court, there appears to still be a dispute over what types of losses Computer Systems Fraud is meant to cover.  Extrinsic evidence of the type requested by the subpoena (and directed at AXIS) is plainly discoverable.

The requested third-party (and party) discovery is also independently relevant to Virtu's claim for breach of the implied covenant of good faith and fair dealing.  *See Certain Underwriters at Lloyd's v. Nat'l Railroad Passenger Corp.*, 2016 WL 2858815, at *10 (E.D.N.Y. May 16, 2016) (collecting cases where parol evidence was relevant to the insured's bad faith claim).  There is no merit to AXIS's position that all discovery into the bad faith Virtu alleged against it should be off limits because Judge Daniels questioned whether the claim would ultimately survive after discovery.  AXIS lost its motion for judgment on the pleadings with respect to the bad faith claim, and whether this claim ultimately succeeds on the merits on summary judgment or at trial is not a basis to withhold discovery, third party or otherwise.  *See Am. Sav. Bank v. Saleski Dev., Inc.*, 812 F. Supp. 28, 31 (S.D.N.Y. 1993) (ordering discovery notwithstanding the court's "doubt as to whether the . . . defendants will ultimately succeed at trial"); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, 2013 WL 1409889, at *10 (D. Conn. Apr. 8, 2013) ("Whether [defendant] ultimately succeeds on its challenges to [plaintiff's claim] may depend upon . . . discovery's fruits, or lack thereof.  That question is for another day.").

Respectfully,

/s/Adam S. Ziffer

Adam S. Ziffer