**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

VIRTU FINANCIAL INC. and VIRTU AMERICAS LLC,

                                      Plaintiffs,

            -against-

AXIS INSURANCE COMPANY,

                                      Defendant.

-----------------------------------------------------------------X

**20-CV-6293 (GBD) (KHP)**

**MEMORANDUM AND ORDER ON MOTION TO COMPEL**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/30/2021

**KATHARINE H. PARKER, United States Magistrate Judge**

      Plaintiffs Virtu Financial Inc. and Virtu Americas LLC (collectively, "Virtu") bring this breach of contract action against Defendant AXIS Insurance Company ("AXIS"). On August 12, 2021, Virtu filed a letter motion to compel AXIS to produce certain discovery. (ECF No. 84.) The letter motion seeks three distinct categories of documents: (1) AXIS's underwriting file and underwriting practices with respect to its coverages for Computer Systems Fraud and Social Engineering Fraud; (2) changes AXIS made to its Computer Systems Fraud and/or Social Engineering Fraud policy forms as a result of Virtu's claim for coverage and the Second Circuit's decision in *Medidata Solutions, Inc. v. Fed. Ins. Co.*, 729 Fed. App'x 117 (2d Cir. 2018); and (3) other documents and communications relating to the *Medidata* decision.

      The Court held a telephonic discovery conference on August 19, 2021 to discuss Virtu's motion. At the conference, AXIS confirmed that, with respect to the first category of documents sought, it would collect and produce any employee training manuals, policies,

and/or procedures on computer-hacking-oriented losses in its possession. Thus, the production of these documents is no longer an issue. The Court addresses the remaining disputes below.

## BACKGROUND

Plaintiffs provide financial services, trading products, and market making services to its clients around the world. Defendant AXIS is a global provider of specialty lines insurance and reinsurance. In 2019, Virtu purchased an insurance policy from AXIS (the "Policy"). The Policy provided coverage for losses suffered from "Computer Systems Fraud" and "Social Engineering Fraud."

In May 2020, Virtu's systems were hacked. According to Virtu, the hackers gained access to a Virtu executive's email inbox and sent a series of emails from that email account requesting wire transfers to foreign banks. Virtu's accounting department, believing these requests to be legitimate, executed the wire transfers. Virtu claims that it lost approximately $10.8 million as a result of the hack. Virtu promptly informed AXIS of the hack and requested confirmation that the losses would be covered by the Policy's Computer Systems Fraud provision. However, AXIS denied coverage under the Computer Systems Fraud provision. Instead, AXIS asserted, and still asserts, that the Policy's Social Engineering Fraud provision is the applicable Policy provision because the loss was sustained as a result of the "intervening acts by employees of Virtu who issued the wire transfers." (*See* Compl. ¶ 43.) The question of which provision applies is particularly significant because the Policy provides $10 million in coverage for losses resulting from computer systems fraud and only $500,000 in coverage for losses resulting for social engineering fraud. (*Id.* ¶ 21.)

**DISCUSSION**

*I.    Applicable Law*

Federal Rule of Civil Procedure 37 provides, in pertinent part, that a "party seeking discovery may move for an order compelling . . . production" if another party fails to produce discoverable documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). The Federal Rules also establish the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant information "within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Indeed, relevance is an extremely broad concept for purposes of discovery. *Pearlstein v. Blackberry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019).

"Rule 26 gives a district court broad discretion . . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for protective orders on just terms." *Coty Inc. v. Cosmopolitan Cosmetics Inc.*, No. 18-cv-11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (cleaned up). Furthermore, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Arg.*, 695 F.3d 201, 207 (2d Cir. 2012).

## II.   *Underwriting File*

Virtu requests AXIS's unwriting file for the Policy.  Virtu contends that the underwriting documents are discoverable because AXIS wrote the Policy and because Virtu is entitled to explore which risks AXIS expected to cover when it sold the Policy to Virtu.  Virtu also contends that it is entitled to the Policy's underwriting file pursuant to its claim for breach of the implied covenant of good faith and fair dealing insofar as the underwriting file is likely to contain documents that go to AXIS's bad faith in denying coverage.

For its part, AXIS argues that the Policy terms are clear and unambiguous and that, therefore, the contents of the underwriting file are irrelevant to this action.  AXIS contends that the underwriting file could provide evidence as to AXIS's intent when it sold Virtu the Policy, but that such extrinsic evidence is not discoverable in a case, such as this one, where the plaintiff does not assert that the policy language is ambiguous.  On this point, AXIS notes that Virtu already argued in its motion for partial summary judgment that the Policy language is unambiguous.  Thus, AXIS asserts that Virtu should be precluded from now arguing that the provisions at issue may be ambiguous as applied to the facts of this case.

Courts in this district have held that, in order to properly interpret an insurance policy, it is necessary to discern how that policy has been interpreted in the past. *See, e.g.*, *Mariner's Cove Site B Assocs. v. Travelers Indem. Co.*, No. 04-cv-1913 (KMW) (RLE), 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005).  To that end, documents demonstrating the drafting history of an insurance policy are relevant and discoverable in actions to recover insurance reimbursement. *Id.*; *see also Cement and Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 182 (E.D.N.Y. 2005) ("usual practice of the district courts in the Second Circuit

does appear to be to allow documents pertaining to drafting history to be discovered in coverage disputes by parties adverse to insurance companies"). "Moreover, under New York law, evidence of intent is relevant until there has been a finding that the policy is subject to only one interpretation." *Mariner's Cove*, 2005 WL 1075400, at *1 (citing *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 129 F.R.D. 63, 67 (S.D.N.Y. 1989)).[1]

Courts in the Second Circuit regularly reject arguments like the one asserted by AXIS that an insured should be precluded from discovering extrinsic evidence because the relevant policy language is unambiguous. *Certain Underwriters at Lloyd's v. National R.R. Passenger Corp.*, No. 14-cv-4717 (FB), 2016 WL 2858815, at *10 (E.D.N.Y. May 16, 2016) (collecting cases). Objections that unambiguous policy language "cannot be undermined through extrinsic evidence presents a challenge that goes to admissibility, as opposed to discoverability." *Id.* This is especially so in cases where the district judge has yet to rule on the ambiguity or clarity of the applicable policy terms. *Id.*

In a similar case, the court in *Admiral Ins. Co. v. Versailles Med. Spa, LLC* held that underwriting files are subject to disclosure when the policyholder has alleged that the insurance policy is ambiguous and there has been no judicial determination concerning whether the language at issue is ambiguous. No. 3:20-cv-568 (JCH), 2021 WL 106273, at *3 (D.

---

[1] Because the Court has subject matter jurisdiction in this case based on diversity of citizenship among the parties pursuant to 28 U.S.C. § 1332, the Court must determine which law governs by applying the choice of law rules of New York, the forum in which this Court sits. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008). In breach of contract cases, New York law applies the "grouping of contacts" approach, which identifies the state with the "most significant relationship to the transaction and the parties." *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994). Here, Virtu's principal place of business is in New York and the Complaint seems to suggest that some of the activities that led to Virtu's losses took place in New York. (Compl. ¶ 17.) Furthermore, based on the case law cited by the parties, they apparently agree that New York law applies. Thus, the Court applies New York law.

Conn. Jan. 12, 2021) (citing *Thompson v. Nat'l Union Fire Ins Co. of Pittsburgh PA*, No. 3:14-cv-00259 (WWE) (HBF), 2015 WL 753721, at *3 (D. Conn. Feb. 23, 2015)).  The court reasoned that in these sorts of cases the underwriting file is helpful in determining (1) the risks the insurer expected to cover when it sold the policy, (2) how the insurer interpreted the relevant policy terms, and (3) whether those terms are ambiguous.  *Admiral Ins. Co.*, 2021 WL 106273, at *3 (citing *Silgan Containers v. Nat'l Union Fire Ins. Co.*, No. C 09-05971 RS (LB), 2010 WL 5387748, at *8 (N.D. Cal. Dec. 21, 2010)).

AXIS argues both that Virtu already conceded that the Policy terms at issue are unambiguous and that Judge Daniels acknowledged the lack of ambiguity in his oral ruling on the parties' cross motions for partial summary judgment.  (ECF No. 85 at 2.)  However, AXIS presents no authority – and the Court is aware of none – that precludes a plaintiff from arguing on summary judgment that the plain language of a policy supports its position on coverage and then arguing, in the alternative, once summary judgment is denied, that the policy language is ambiguous.  To the contrary, the Court finds that Virtu can assert such an argument in this case depending on the discovery still yet to be produced.  *See Phillips v. Clark Cty. Sch. Dist.*, No. 2:10-cv-2068 (GMN) (GWF), 2012 WL 135705, at *4 (D. Nev. Jan. 18, 2012) ("[p]laintiff has therefore not abandoned his right to assert that the policy is ambiguous if his motion for partial summary judgment is denied").

To be sure, Judge Daniels expressed the view when denying the parties' cross motions for summary judgment motion as premature that:

> [t]here doesn't seem to be any real dispute as to . . . what the . . . language of the policy requires.  [The] dispute is, is whether or not the facts of what occurred in this case qualify under that policy language.  So

> it's pretty clear what the policy says.  I don't think there's a whole lot of ambiguity about the language of the policy.  There's a definition of computer systems fraud and there's a definition of social engineering fraud.  And, as they say, you want the more money and they want the less money.

(ECF No. 71, 8:25-9:8.)  However, this passing comment was merely dicta.  Judge Daniels did not actually come to a final conclusion about the language; he denied the motion based on his view that the parties required some additional discovery on what happened so that the Court would be better able to interpret and apply the policy to the circumstances of Virtu's loss.  (ECF No. 71, 56:21-58:6.)  Therefore, his statement is not binding on the parties and does not constitute a ruling on whether the contract language at issue is ambiguous or clear.  *See Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 502 (S.D.N.Y. 2012) ("dictum, i.e., a statement not essential to the holding, is not the law of the case").

To the extent AXIS contends that the Policy terms at issue in this case – the Computer Systems Fraud provision and the Social Engineering Fraud provision – are clearly unambiguous as a matter of law, its argument is unpersuasive for purposes of this discovery motion.  The Court will make a determination on the clarity of the Policy language at a later date.

The Court notes that if "a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business," the contract is ambiguous.  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004); *see also U.S. Naval Inst. v. Charter Commc'ns, Inc.,* 875 F.2d 1044, 1048 (2d Cir. 1989) ("[t]he meaning of a contract term that is susceptible to at least two reasonable interpretations

is generally an issue of fact, requiring the trier of fact to determine the parties' intent").  That said, a contract is not ambiguous simply because the parties put forth different interpretations; ambiguity only results if the parties' diverging interpretations are both reasonable.  *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 643 (S.D.N.Y. 2016).  In this case, the parties advance differing interpretations of the Policy—particularly with respect to the Computer Systems Fraud and the Social Engineering Fraud provisions.  Although the parties have focused thus far on whether the events that led to Virtu's losses qualify as either computer systems fraud or social engineering fraud under the Policy language, to the extent both parties' interpretations are deemed reasonable, the Court would turn to extrinsic evidence.  Additionally, a court's assessment as to whether contract language is ambiguous is a fact dependent inquiry.  "A contract may be ambiguous when applied to one set of facts but not another." *Eternity Global Master Fund*, 375 F.3d at 178 (internal quotation marks and citation omitted).  Therefore, as the parties accumulate discovery and both sides gain a firmer understanding of what transpired, it is altogether possible that the Policy terms, as applied to the facts of the case, may be found ambiguous.  Virtu is entitled to gather evidence to support its interpretation of the relevant Policy language and any extrinsic evidence on which it may have to rely and to which the Court may turn to interpret the Policy.

Accordingly, Virtu's motion to compel is GRANTED IN PART; AXIS shall produce those portions of the underwriting file that discuss the disputed Policy provisions from the time Virtu first engaged with AXIS in connection with the Policy up until the date Virtu filed its claim for coverage.

### III.     *Changes to the Policy Forms After Virtu's Claim for Coverage*

Virtu learned through its insurance broker that AXIS may have made changes to its policy forms as a result of Virtu filing its claim for coverage. For this reason, Virtu now seeks documents showing any changes to the relevant policy forms that were made after AXIS received Virtu's claim for coverage on June 1, 2020.

Unlike the underwriting file, discussed above, the Court fails to see how any of these policy form changes after Virtu filed its claim could be relevant to the parties' claims and defenses. First, evidence of policy form changes imposed *after* Virtu filed its claim for coverage has no bearing on the parties' intent with respect to the meaning of the Policy terms, which were drafted and agreed on well before any of these changes would have occurred. Second, to the extent that Virtu premises this request on its bad faith claim, the Court agrees with AXIS that evidence showing later changes to the Policy language for use with other customers has no bearing on whether AXIS acted in bad faith in selling and administering the Policy vis-à-vis Virtu. Third, the cases relied on by Virtu in support of its request are inapposite because they do not involve similar facts or require production of post-claim changes to a policy. *See Pentair Water Treatment (OH) Co. v. Continental Ins. Co.*, No. 08-cv-3604 (BSJ) (JCF), 2009 WL 3817600, at *3 (S.D.N.Y. Nov. 16, 2009) (compelling discovery of comparable pollution exclusion clauses, not changes to those clauses, without reference to the timing of those comparable policies); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05-cv-6430 (VM) (JCF), 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (finding similar contracts covering the same timeframe and negotiated by a particular witness were relevant to contract construction based, in large part,

9

on the witness's deposition testimony claiming that the contract language at issue was to have a certain meaning "based on his experience . . . and his role in negotiating 'other agreements'").

Accordingly, Virtu's motion to compel AXIS to search for and produce documents and communications showing changes to policy forms that were implemented after AXIS received Virtu's claim for coverage is DENIED.

### IV.     *Documents Related to the Second Circuit's Medidata Decision*

At the August 19, 2021 conference Virtu clarified that it was only seeking documents related to policy, procedure, and training changes prompted by the Second Circuit's *Medidata* decision.  In particular, Virtu seeks documents that train AXIS employees on how *Medidata* impacted the claims handling for, and interpretation of, Computer Systems Fraud coverage.  AXIS indicated at the conference that it is already willing to produce documents concerning *Medidata* as they relate to this case and to the extent any such documents exist in the files of the claims handler who handled Virtu's claim for coverage.  To the extent that Virtu seeks documents beyond those AXIS had already agreed to produce, Virtu's request is DENIED as it is not proportional to the needs of this case.  Action taken by AXIS in response to *Medidata* with respect to other insureds or more generally have no bearing on the meaning of the Policy issued to Virtu or AXIS's handling of Virtu's claim.  The Court finds that requiring AXIS to search for such information is not proportional to the needs of this case.

**CONCLUSION**

For the reasons set forth above, Plaintiff Virtu's motion to compel (ECF No. 84) is GRANTED in part and DENIED in part.

**SO ORDERED.**

DATED:   New York, New York
         August 30, 2021

_____
KATHARINE H. PARKER
United States Magistrate Judge